## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA,

                **Plaintiff,**

**v.**                                            **Case No:  6:09-cr-131-Orl-18GJK-2**

ALFREDO GARZA,

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION FOR RETURN OF PROPERTY PURSUANT TO RULE 41g FRCP (Doc. No. 92)**
>
> **FILED:**      **August 15, 2014**
>
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

## I.   BACKGROUND.

On July 15, 2009, Alfredo Garza (the "Movant") was indicted on two counts of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Doc. No. 1.[1]  The indictment also included a separate forfeiture count relating to any property

_____

[1] Mr. Garza is defined as the "Movant" herein because a Rule 41(g) motion filed after all criminal proceedings have terminated is treated as a civil action pursuant to the Court's inherent and/or "anomalous" jurisdiction.  *See United*

constituting or derived from the proceeds of the criminal acts complained of, or any property used and intended to be used to commit or facilitate those criminal acts. Doc. No. 1 at 2-3.

On August 18, 2009, pursuant to a negotiated plea agreement, the United States filed a Notice of Maximum Penalty, Elements of Offense, Personalization of Elements and Factual Basis (the "Notice"). Doc. No. 34. The Notice provides that in March of 2009, the Drug Enforcement Administration (the "DEA") learned from two confidential sources ("CS") that a drug trafficking organization was planning to ship a significant amount of cocaine from Houston, Texas to Orlando, Florida. Doc. No. 34 at 1. Under the supervision of DEA agents, the CS's drove to Orlando to deliver twenty-five kilograms of cocaine to an individual known only as "El Gordo," but later identified as Salvadore Villa, Jr., who is one of Movant's co-defendants under the indictment. Doc. Nos. 1; 34 at 2-3. Villa agreed to meet the CS's and exchange money for the cocaine at a service plaza on the Florida Turnpike, where several law enforcement agents had taken up surveillance. Doc. No. 34 at 3.

Two trucks, one brown and the other a green 2003 Dodge Ram 1500, both registered to the Movant, arrived at the plaza a short time later. Doc. Nos. 34 at 3; 93-5 at 1. Villa and Movant were in one truck and Arnulfo Ledesma-Vallejo was in another truck. Doc. No. 34 at 3. Movant conducted counter-surveillance in the parking lot, while Villa met with one of the CS's inside the plaza. Doc. No. 34 at 3. After exiting the plaza, the CS gave Ledesma-Vallejo the cocaine, who then left with the drugs in a truck, and the CS, Villa, and the Movant went back inside the plaza to

---

*States v. Martinez*, 241 F.3d 1329, 1330-31 (11th Cir. 2001) (district court has equitable jurisdiction over motion to return property filed after criminal proceedings have terminated); *United State v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989) (explaining that court's power to fashion an equitable remedy on a motion for return of property arises from the court's "anomalous jurisdiction"); *Hunsucker v. Phinney*, 497 F.2d 29, 32-33 (5th Cir. 1974) (recognizing court's exceptional "anomalous jurisdiction" to return property or fashion equitable remedy even in the absence of an express statutory grant of authority and quoting *Lord v. Kelley*, 223 F.Supp. 684 (D. Mass. 1963) (coining the phrase "anomalous jurisdiction")).

discuss payment.  Doc. No. 34 at 3-4.  At that same time, an Orange County Florida Sheriff's Deputy initiated a traffic stop on Ledesma-Vallejo in the green Dodge Ram.  Doc. Nos. 34 at 4; 93-5 at 1-3.  As he was being stopped, Ledesma-Vallejo apparently called Villa, who then instructed all parties remaining at the service plaza to leave immediately.  Doc. No. 34 at 4.

Ledesma-Vallejo was arrested by the Orange Country Sheriff's Office and, to some extent, cooperated with law enforcement officials.  Doc. Nos. 34; 93-5 at 1-3.  Movant's Dodge Ram, which Ledesma-Vallejo was driving at the time of his arrest, was towed from the scene and impounded by Ace Auto Parts & Wrecker Services ("Ace").  Doc. No. 93-5 at 2.  According to records provided by the Government, Movant's Dodge Ram was never seized or in the possession of the DEA or any other federal agency.  Doc. Nos. 93-5 at 1-10; 93-6 at 1; 93-7 at 1; 93-8 at 1; 93-9; 93-11 at 1; 93-12 at 1; 93-13 at 1-2; 93-14; 93-15; 93-25 at ¶ 6.  After Ledesma-Vallejo's arrest, the vehicle was impounded by Ace, who sent and published notice of the vehicle's impoundment to Movant, and, after the vehicle went unclaimed, Ace proceeded to sell the Dodge Ram at a public sale.  Doc. Nos. 93-7 – 93-15; 93-25 at ¶ 6.  The Government has also submitted evidence showing that on July 22, 2009, DEA agents personally informed Movant the Dodge Ram had been impounded and they inquired why Movant had not claimed the truck.  Doc. No. 93-6 at ¶ 2.

The Notice provides:

> To further the investigation, DEA did not arrest Villa or [Movant]. After certain events, Villa, [Movant] and Ledesma-Vallejo were indicted.  DEA agents in Tampa arrested Villa and [Movant] at their home, where agents found cocaine, cocaine presses, money, and other paraphernalia.

Doc. No. 34 at 5-6.  According to the docket, Movant was arrested on or about July 22, 2009.  Doc. No. 17.

On July 22, 2009, at the time of Movant's arrest, DEA agents seized $237,257.00 in United States' currency from Villa at the residence where Movant and Villa were found.   Doc. Nos. 93-17 at 3-6; 93-18 – 93-23; 93-26 at 2-6.   Although it appears he was present at the time the currency was seized, on August 13, 2009, the DEA sent written notice of the seizure to Movant by certified mail to his residence and to his present place of confinement.   Doc. No. 93-26 at ¶¶ 4(e)-(f).   An individual at Movant's residence signed for the notice.   Doc. No. 93-26 at ¶ 4(e).  For one day in three successive weeks between August 31, 2009 and September 14, 2009, the DEA also published notice of the seizure in The Wall Street Journal.   Doc. No. 93-26 at ¶ 4(h).   On September 10, 2009, the DEA sent written notice of the seizure by certified mail to Movant again at his present place of confinement, which was accepted.     Doc. No. 93-26 at ¶ 4(l).     No claims to the $237,257.00 were submitted to the DEA and, on November 13, 2009, the currency was administratively forfeited to the United States pursuant to 19 U.S.C. § 1609.  Doc.  Nos. 93-26 at ¶ 4(m); 93-26 at 12-20; 93-27 – 93-29.

On August 19, 2009, the undersigned held a change of plea hearing, at which time Movant pled guilty to both counts under the indictment.  *See* Doc. Nos. 35-38, 79.  However, no written plea agreement was filed in this case.  *See* Doc. No. 79 at 2.  The district court accepted Movant's plea without objection and, on November 30, 2009, sentenced Movant to 120 months imprisonment, followed by a five year term of supervised release, and a $200.00 assessment.  Doc. Nos. 59, 66.  The final judgment did not include a criminal forfeiture judgment.  Doc. No. 66.

On January 13, 2014, more than four years later, pursuant to Rule 41(g), Federal Rules of Criminal Procedure, Movant filed a motion for return of property.  Doc. No. 78.  The procedural history of that motion is set forth in the Court's prior orders.  *See* Doc. Nos. 81, 85, 90.  On August 15, 2014, Movant filed a renewed Motion for Return of Seized Property Pursuant to Rule 41(g)

(the "Motion").  Doc. No. 92.  On August 29, 2014, the Government field a response (the "Response").  Doc. No. 93.

## II.    THE MOTION AND RESPONSE.

Pursuant to Rule 41(g), Federal Rules of Criminal Procedure, Movant requests an order directing the United States to return certain seized property to Movant.  Doc. No. 92 at 1.  More specifically, Movant requests the return of the following property: 1) an Omega Double 7 Edition Watch (the "Watch"); 2) 2003 Dodge Ram Single Cam 4x4 Pick-Up (the "Truck"); 3) $239,937.00 in United States currency; and 4) various construction tools which were located in the Truck (the "Tools").  Doc. No. 92 at 5.  Movant maintains that the search and seizure of the above property was illegal and that none of the property is being retained for evidence in any proceeding.  Doc. No. 92 at 2-3.  Movant also contends that he did not receive actual notice of the forfeiture proceedings with respect to the currency.  Doc. No. 3.

In the Response, the Government argues that the Motion should be denied for several reasons.  First, the Government generally contends that Movant has failed to meet his burden under *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975), and the Court should decline to exercise its equitable jurisdiction over the Motion.   Doc. No. 93 at 8-10.[2]   Second, with respect to the $239,937.00, the Government maintains that the Court lacks subject matter jurisdiction under Rule 41(g).  Doc. No. 93 at 10-15.  Third, the Government contends that it has never been in possession of the Truck or the construction tools contained therein, it was impounded and sold by a private party under Florida law, after notice to Movant, and, therefore, the Court lacks jurisdiction under Rule 41(g).   Doc. No. 93 at 16-7.  Fourth, the Government submits that it never seized nor

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11 t h Cir. 1981) (adopting as binding precedent all prior decisions of the former Fifth Circuit handed down before October 1, 1981).

possessed the Watch.    Doc. No. 93 at 3.    In support and in compliance with this Court's prior

orders (Doc. Nos. 85, 90), the Government has submitted detailed reports, notices of seizure,

forfeiture judgments, and affidavits.  Doc. Nos. 93-1 – 93-29.[3]

## III.    RULE 41(g).

Rule 41(g), Federal Rules of Criminal Procedure, provides:

> <u>A person aggrieved by</u> an unlawful search and seizure of property
> or by <u>the deprivation of property may move for the property's return</u>.
> The motion must be filed in the district where the property was
> seized.   <u>The court must receive evidence on any factual issue
> necessary to decide the motion</u>.  If it grants the motion, the court
> must return the property to the movant, but may impose reasonable
> conditions to protect access to the property and its use in later
> proceedings.

Fed.R.Crim.P. 41(g) (emphasis added).   A motion for return of property that is brought after

criminal proceedings have terminated is treated as a civil action arising under the Court's inherent

equitable authority and/or its "anomalous jurisdiction" over those individuals who are officers of

the Court.  *See United States v. Martinez*, 241 F.3d 1329, 1330-31 (11th Cir. 2001) (district court

has equitable jurisdiction over motion to return property filed after criminal proceedings have

terminated); *United State v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989) (explaining that court's

power to fashion an equitable remedy on a motion for return of property arises from the court's

"anomalous jurisdiction"); *Hunsucker v. Phinney*, 497 F.2d 29, 32-33 (5th Cir. 1974) (recognizing

court's exceptional "anomalous jurisdiction" to return property or fashion equitable remedy even

in the absence of an express statutory grant of authority and quoting *Lord v. Kelley*, 223 F.Supp.

684 (D. Mass. 1963)).

---

[3] On September 18, 2014, without leave of Court, Movant filed a reply to the Reponses.  Doc. No. 94.  Pursuant to
Local Rule 3.01(c), "[n]o party shall file any reply or further memorandum directed to the motion or response . . .
unless the Court grants leave."   *Id.*  Accordingly, the undersigned has not considered the arguments raised nor the
requests for relief presented in the reply.

Courts have stressed that the exercise of such anomalous jurisdiction should be limited and not routine. *Richey*, 515 F.2d at 1245; *In Re $67,470.00*, 901 F.2d 1540, 1544 (11th Cir. 1990) ("The decision to invoke equitable jurisdiction is highly discretionary and must be exercised with caution and restraint.").   In determining whether to exercise its anomalous or equitable jurisdiction under Rule 41(g), courts consider the following non-exhaustive factors: 1) whether the federal agents displayed "a callous disregard for the constitutional rights" of the movant; 2) whether the movant has a possessory interest in the property; 3) whether the movant would be irreparably injured without the return of the property; and 4) whether the movant has an adequate remedy at law. *Richey*, 515 F.2d at 1243-44 (5th Cir. 1975).  "Enveloping all of these factors are the basic equitable considerations of whether the petitioner's conduct and the merits of his position require judicial review to prevent manifest injustice." *In Re* $67,470.00, 901 F.2d at 1545.  Thus, courts also consider such factors as whether the movant has clean hands and laches before determining whether to exercise jurisdiction over a Rule 41(g) motion. *See United States v. Howell*, 425 F.3d 971, 974 (11th Cir. 2003) (declining to invoke jurisdiction under Rule 41(g) where movant did not have clean hands).

## IV.    <u>ANALYSIS.</u>

As an initial matter, the Court notes there is no evidence suggesting the Government displayed a callous disregard for Movant's constitutional rights, that Movant will be irreparably harmed without the return of the property, or that Movant lacks an adequate remedy at law. *See* Doc. No. 92.   Moreover, despite being present when the currency was seized and being told by DEA agents that the Truck had been impounded, Movant waited nearly five (5) years to seek equitable relief. *See* Doc. Nos.  93-6 at ¶ 2; 93-26 at ¶¶ 4(e)-(f).   *See In re 67,470.00*, 901 F.2d at 1545 ("It is inappropriate for a court to exercise equitable jurisdiction to review the merits of a

forfeiture matter when the petitioner elected to forego the procedures for pursuing an adequate remedy at law."). Thus, as a threshold matter, the Defendant has failed to come forth with any evidence warranting the exercise of the Court's anomalous jurisdiction, and the Defendant's delay in seeking to invoke such equitable jurisdiction weighs heavily against the Defendant. For those reasons and the reason set forth below as to the specific property at issue, the undersigned recommends that the Motion (Doc. No. 92) be denied.

### A. The $239,937.00.

The $239,937.00, which was seized from the residence at the time of Movant's arrest has been administratively forfeited to the United States pursuant to 19 U.S.C. § 1609. Doc. Nos. 93-26 at ¶¶ 4(m), 5; 93-29 at 2; 93-29 at 14. "It is well-settled that the proper method for recovery of property which has been subject to civil forfeiture is not the filing of a [Rule 41(g)] Motion, but filing a claim in the civil forfeiture action." *United States v. Castro*, 883 F.2d 1018, 1019 (11th Cir. 1989). *See also Valderrama v. United States*, 417 F.3d 1189, 1195-96 (11th Cir. 2005) (a motion to set aside forfeiture under 18 U.S.C. § 983(e) is the "exclusive remedy" to challenge an administrative forfeiture). Rule 1(a)(5)(B), clearly provides that the Federal Rules of Criminal Procedure, do not govern "a civil property forfeiture for violating a federal statute." *Id*. Thus, Movant may not proceed under Rule 41(g).

While the Court "lacks jurisdiction to review the merits of the administrative or nonjudicial forfeiture decisions," assuming the Court could construe the Motion as being brought under 18 U.S.C. § 983(e), it would still fail. "In cases subject to § 983(e), the movant must show both 1) that the government knew or reasonably should have known of his interest in the forfeited property yet failed to take reasonable steps to notify him and 2) that he did not know or have reason to know of the property's seizure within sufficient time to file a timely claim. . . ." *United States v. Lopez*,

2012 WL 3827365, at *1 (S.D. Ala. Sept. 4, 2012).   In this case, although the Movant claims that he never received actual notice of the forfeiture proceedings (*see* Doc. No. 92 at 2), "[d]ue process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006).   Instead, due process requires notice that is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Dusenbery v. United States*, 534 U.S. 161, 170-71 (2002).   Here, Movant was present at the time the currency was seized, the DEA sent notice by certified mail to his residence and two separate places of confinement, and published notice of the seizure in the The Wall Street Journal once a week for three consecutive weeks.   Doc. Nos. 93-6 at 2; 93-17 at 3-6; 93-18 – 93-21; 93-26 – 93-29.   The undersigned finds that the Government satisfied Movant's due process rights as the notice provided to the Movant was reasonably calculated to apprise him of the pendency of the forfeiture proceedings and to provide him with an opportunity to raise any claim to the funds therein.   *See Dusenbery*, 534 U.S. at 170-71.   Movant simply failed to file a timely claim.   Accordingly, it is **RECOMMENDED** that the Court **DENY** the Motion (Doc. No. 92) with respect to the $239,937.00.

### B.  The Truck and Construction Tools.

The Government has come forth with substantial evidence, including an affidavit (Doc. No. 93-24 at ¶ 4) showing the Truck and Construction tools were not seized by nor have they been in the possession of the DEA or any other federal agency.   *See* Doc. Nos. 93-5 at 1-10; 93-6 at 1; 93-7—93-16; 93-24 at ¶ 4; 93-25 at 2-4.   The evidence shows that the Truck and its contents were impounded by Ace, notice was sent to Movant, the DEA informed Movant in July of 2009 that the Truck had been impounded, Movant failed to retrieve the Truck from Ace or take any other action, and, pursuant to Section 713.78, Florida Statutes, Ace proceeded to lawfully sell the Truck at

auction.  *Id*.  As the Truck and Construction Tools have never been in the possession of the Government, this Court lacks jurisdiction to order the Government to return them.  *See United States v. Solis*, 108 F.3d 722, 723 (7th Cir. 1997); *United States v. Downs*, 22 F. App'x 961, 962 (10th Cir. 2001).  Accordingly, it is **RECOMMENDED** that the Court **DENY** the Motion (Doc. No. 92) with respect to the Truck and Construction Tools.

### C.  The Watch.

Movant relies solely on conclusory allegations, submitting no evidence indicating that a Watch was seized during his arrest.  Doc. No. 92.  The Government has submitted substantial evidence indicating that no Watch was seized from the Movant, including two affidavits and numerous inventory reports (Doc. Nos. 93-24 at ¶ 4; 93-25 at ¶ 5).  *See* Doc. Nos. 93-1 – 93-29.  Based on this record, the undersigned finds there is no evidence indicating that the Government ever seized the Watch and, therefore, there is no basis for the Court to exercise its anomalous jurisdiction under Rule 41(g).  Accordingly, it is **RECOMMENDED** that the Motion (Doc. No. 92) be **DENIED** with respect to the Watch.

## V.  CONCLUSION.

Based on the forgoing, it is **RECOMMENDED** that the Motion be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**The Clerk is directed to send a copy of this report and recommendation to Movant by Certified Mail**.

**RECOMMENDED** in Orlando, Florida on November 12, 2014.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Presiding District Judge
Unrepresented parties by certified mail